UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD G. DRIVER,            ) | |
|                              ) | |
|   Plaintiff,                 ) | |
|                              ) | |
|   v.                         ) | No. 3:16-cv-01959 |
|                              ) | Chief Judge Crenshaw |
| PRO AG MANAGEMENT, INC., d/b/a ) | |
| PRODUCERS AG INS – LEXINGTON ) | |
| and ARMTECH INSURANCE        ) | |
| SERVICES, INC.               ) | |
|                              ) | |
|   Defendant.                 ) | |

## MEMORANDUM OPINION

Now before the Court is a Motion to Stay Pending Arbitration (Doc. No. 39) filed by Pro Ag Management, Inc. ("Pro Ag"), and a Motion to Compel Arbitration (Doc. No. 42) filed by Ronald G. Driver. Those Motions have been fully briefed[1] by the parties (Doc. Nos. 40, 43, 44, 45-1, 45), and both Motions will be granted.

### I. Factual Background

For purposes of the pending motions only, the following facts appear undisputed:

Driver is a farmer who lives in Macon County, Tennessee. He grows soybeans and Burley tobacco. Pro Ag and ARMtech Insurance Services, Inc. ("ARMtech") are approved insurance providers ("AIPs")[2] authorized to issue Multiple Peril Crop Insurance ("MPCI) coverage under the

---

[1] Pro Ag has filed a Motion for Leave to File a Reply Memorandum (Doc. No. 45), which is unopposed. That Motion will be granted.

[2] With apologies in advance, the Court welcomes the reader to "the acronymic world of federal legislation" and agencies. Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 749 (2017); see Indiana Family & Soc. Servs. Admin. v. Thompson, 286 F.3d 476, 477 (7th Cir. 2002) ("Acronyms are a staple of court decisions, especially in cases . . . involving bureaucratic behemoths").

1

Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501, *et seq*.

In 2011, Driver's crops were insured under a policy issued by Pro Ag, and he received indemnity for lost soybeans in the amount of $6,139. For the next few years, Driver's crops were insured under policies issued by other AIPs.

At some point in 2014, Pro Ag determined that Driver had been overpaid $2,129 for the 2011 soybean indemnity. Driver did not dispute this alleged overpayment, and agreed to repay ten percent immediately, with the remainder due within a year. He signed a "Pro Ag Payment Agreement – Indemnity Overpayment," memorializing the agreement on August 8, 2014, and thought he had a year from then to repay the balance. However, under the written terms of the Payment Agreement, the payment had to be postmarked on or before August 1, 2015.

In 2015, Driver planted 228.3 acres of Burley tobacco. That tobacco was planted in two counties in Tennessee, and three counties in Kentucky. All of the crops were insured through five separate policies issued by ARMtech.

After bad weather severely damaged the crop, an ARMtech adjuster authorized Driver to destroy 100 acres of tobacco. Based on Driver's calculation, that destruction resulted in a payable indemnity under the ARMtech policies in the combined amount of $448,712.

On August 5, 2015, Driver was informed by David Leath, an insurance agent, that the entire balance on the 2011 overpayment was due August 1, 2015, and that Driver risked losing crop insurance coverage because he did not pay by that date. The next morning, Driver and Leath contacted Jeanie Bonewitz, Pro Ag's National Crop Accounting Manager, in an effort to resolve the matter, but were told that there was nothing Driver could do.

Undeterred and not wanting to lose his crop insurance, Driver sent Pro Ag a cashier's check

via FedEx delivery in the amount of $1,916, which represented the balance of the 2011 overpayment. Driver called Bonewitz to tell her that the check had been sent, but was again told that nothing could be done. Driver then contacted Jeffrey Van Landingham, Pro Ag's Executive VP, who also advised Driver nothing could be done, other than to appeal the determination to the National Appeals Division of the United States Department of Agriculture ("USDA"). Driver also contacted Sam Bruce, National Litigation Manager for ARMTech, and Scarlet Boyd of the Risk Management Agency ("RMA"), which is an agency of the USDA that manages the Federal Crop Insurance Corporation ("FCIC").

Meanwhile, Pro Ag received and deposited Driver's $1,916 payment, and reinstated his insurance effective August 6, 2015, the date the cashier's check was given to FedEx. Nevertheless, on August 12, 2105, Bonewitz notified the RMA that Driver was ineligible for insurance coverage for crop year 2015. In turn, the RMA notified ARMtech on August 18, 2015, that Driver was ineligible for federally-reinsured crop insurance coverage for the 2015 crop year.

Even though the $448,712 claim was pending, ARMtech suspended the claims process. It thereafter refused to pay the claim.

Based on these events, Driver filed his Complaint alleging negligence by both ARMtech and Pro Ag. The essence of his claim is that neither Defendant advised him of the existence of the February 24, 2015, Informational Memorandum PM-15-010 under the Agricultural Act of 2014, which provided that, subject to certain conditions, AIPs could reinstate a policy if the insured demonstrated that the ineligibility was due to the failure to pay a delinquent debt owed to the AIP or FCIC. Nor did either Defendant provide Driver with a "Request for AIP Authorized Reinstatement," as required by the Informational Memorandum. Driver also claims that Pro Ag

3

negligently failed to transmit his request for reinstatement to the RMA which led the agency to determine on August 19, 2015 that he was ineligible for insurance for the 2015 crop year.

In addition to filing suit in this Court, Driver filed a Demand for Arbitration pursuant to the RDA's Bulletin No. MGR-12-003.1. In those proceedings Driver disputed the determinations by Pro Ag and ARMtech that (1) he was ineligible for crop insurance in 2015; (2) he was not eligible for reinstatement under the Informational Memorandum; (3) his 2015 policies were terminated; and (4) he was not entitled to indemnity under any of the five ARMtech policies.

## II. Legal Discussion

Driver and Pro Ag agree that Driver's claims are subject to arbitration under the Federal Arbitration Act ("FAA"). They also agree that this case should be stayed pending that arbitration. The lone naysayer is ARMtech, which argues that "[t]his Court should retain jurisdiction and require Pro Ag to request reinstatement of Driver's eligibility." (Doc. No. 44 at 20).

### A.

"The FCIC acts, when certain eligibility conditions are met, as reinsurer on crop insurance policies written by approved private insurers such as Pro Ag" and ARMtech. Davis v. Producers Agr. Ins. Co., 762 F.3d 1276, 1284 (11th Cir. 2014); Farmers Crop Ins. All. v. Laux, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006) (noting that "private insurance companies sell and service crop insurance policies and are reinsured by the FCIC"). "In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations." Id. That is, the FCIA establishes "terms and conditions of insurance . . . even though the crop insurance policy is between the farmer and an approved insurance provider." Id. Additionally, the Code of Federal Regulations "includes text for a 'Common Crop

4

Insurance Policy' used by insurers, standard throughout the industry, when the FCIC provides reinsurance." Id.; see, William J. Mouren Farming, Inc. v. Great Am. Ins. Co., 2005 WL 2064129, at *10 (E.D. Cal. Aug. 24, 2005) (noting that the FCIC makes Common Crop Insurance Policies "available to a reinsuring private insurer that issues the insurance policy in the insurer's name," with the FCIC approving the policy language and establishing the policies "premiums, terms and conditions").

Common Crop Insurance Policies (include those issued by Pro Ag and ARMtech) contain an arbitration provision. It reads:

> (a) If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.

7 C.F.R. § 457.8 (Policy § 20(a)(1)). The specific exceptions to arbitration are for determinations of "good farming practices," id. § 20(d), and policy interpretations, which are subject to administrative review, id. § 20(e). None of the parties argues that either exception applies here.

**B.**

"The *sine qua non* of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 314 (6th Cir. 2000) (quoting Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1061 (5th Cir. 1990)). "Crop insurance contracts fall within this category and are subject to the FAA." Great Am. Ins. Co. v. Moye, 733 F. Supp. 2d 1298, 1302

5

(M.D. Fla. 2010) (collecting cases); see, Cain Field Nursery v. Farmers Crop Ins. All., Inc., 2012 WL 1286657, at *5 (E.D. Tenn. Apr. 13, 2012) (collecting cases for the proposition that the FAA "applies to arbitration awards in crop insurance cases"); Svancara v. Rain & Hail, LLC, 2009 WL 2982906, at *3 (D. Neb. Sept. 11, 2009) (concluding "that a crop insurance policy, reinsured by a federal agency, 'involves interstate commerce'"); Lucus v. Armtech Ins. Servs., 2015 WL 11120542, at *7 (S.D. Miss. Mar. 6, 2015) ("Both federal and state courts have found crop insurance polices containing arbitration provisions to constitute contracts "involving commerce," and thus, subject to the FAA.").

Under the FAA, "[t]here is a strong presumption in favor of arbitration[.]" Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 573 (6th Cir. 2003) (citing O. J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 355 (6th Cir. 2003)). This is in keeping "the central purpose of the Federal Arbitration Act to ensure 'that private agreements to arbitrate are enforced according to their terms.' " Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53–4 (1995) (quoting Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

To enforce its mandate, the FAA "provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 & 4). However, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Id.

## C.

Against this backdrop, ARMtech's objections to arbitration fail. Notwithstanding the arbitration language contained in the policies, and despite the fact that the FAA applies to Common Crop Insurance Policies, ARMtech does not mention the FAA in its 20-page brief, even in passing. Instead, ARMtech devotes the bulk of its brief describing the standard policy language, discussing the applicable law, and arguing that it is not the one responsible for Driver's lack of coverage.

ARMtech's primary argument is that FCIC and/or RMA made all of the decisions that give rise to Driver's claims, that ARMtech was forced to cancel the policy under federal law, and that, once Driver was deemed ineligible, ARMtech could not make any further determinations regarding the policies. This does not preclude arbitration of Driver's claims.

"[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration[.]" Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005). Thus, "where the contract contains an arbitration clause," a request "to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 650 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)). Further, "[u]nder the FAA, a district court's consideration of a motion to compel arbitration is limited to whether the parties entered into a valid agreement to arbitrate and does not reach the merits of the parties' claims." Lee v. Red Lobster Inns of Am., Inc., 92 F. App'x 158, 161 (6th Cir. 2004).

This Court cannot say with positive assurance that this dispute is not subject to arbitration. While ARMtech insists that the FCIC/RMA made the relevant decisions, the fact remains that

ARMtech, too, made decisions, even if they were based upon FCIC/RMA' determination of ineligibility. Based upon that determination, ARMtech decided that Driver was not eligible for crop insurance in 2015, his 2015 policies were terminated, and he was not entitled to payment under any of the policies, which is exactly what Driver claims both here and in the arbitration proceedings. See Lucus v. Armtech Ins. Servs., 2015 WL 11120542, at *9 (S.D. Miss. Mar. 6, 2015) (noting that all doubts are to be construed in favor of arbitration and "declin[ing] to deny arbitration pursuant to the Plaintiff's characterization of ARMtech's arbitrable 'determination' as a non-arbitrable failure to act").

Even ARMtech does not appear to be taking the position that such claims are not arbitrable. To the contrary, in its brief ARMtech argues that if "this civil action is referred to arbitration, an arbitrator could issue" an order requiring "Pro Ag to request AIP reinstatement of Driver." (Doc. No. 44). It claims, however, that "the arbitrator would lack jurisdiction and authority should FCIC/RMA refuse the request, leading us right back to this Court where we all started." (Doc. No. 44 at 19). ARMtech also argues that "[o]rdering this civil action to arbitration is nothing more than a delay that Driver cannot afford." (Id. at 20).

Actually, the Demand for Arbitration and Complaint were filed contemporaneously, and Driver does not seem to be concerned about any delay. Not only did he demand arbitration, he also filed a Motion to Compel Arbitration when ARMtech balked at his request.

The fact that the parties would have to return to his court for a judgment enforcing an award is not novel. "The district court has the power to enforce the arbitrators' award," Stonebridge Equity v. China Auto. Sys., Inc., 520 F. App'x 331, 338 (6th Cir. 2013), as the FAA itself makes clear: "at any time within one year after the award is made any party to the arbitration may apply

8

to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected," 9 U.S.C. § 9.

Finally, the Court rejects ARMtech's suggestion that arbitration should be excused and this Court should simply order Pro Ag to request that Driver be reinstated. Not only might the responsibility to seek reinstatement be shared by both Pro Ag and ARMtech, the Complaint contains no request for specific performance or injunctive relief against either Pro Ag or ARMtech. Instead, the Complaint alleges negligence and request compensatory damages for that negligence.

## IV. Conclusion

On the basis of the foregoing, Driver's Motion to Compel Arbitration (Doc. No. 42) will be granted, as will Pro Ag's Motion to Stay Pending Completion of Arbitration.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE